UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT MUNOZ; § | | |
| JUVENTINO CASTILLON; § | | |
| AND JAMES ERIC SHORT, § | | |
| Individually and On Behalf of All § | | COLLECTIVE ACTION COMPLAINT |
| Others Similarly Situated, § | | |
|     Plaintiffs, § | | CIVIL ACTION NO. 5:20-CV-1414 |
| § | | |
| vs. § | | |
| § | | |
| CLAY & DOMINGUE, LLC; AND § | | |
| DARRIN CLAY § | | |
|     Defendants. § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Robert Munoz, Juventino Castillon and James Eric Short, on behalf of themselves and all others similarity situated ("Plaintiffs"), file this Original Complaint, as follows:

### I. PRELIMINARY STATEMENT

1.   Plaintiffs are or were employees of Clay & Domingue, LLC ("C&D") and Darrin Clay ("Defendants") as welders. Plaintiffs were hired by Defendants as independent contractors, despite the fact that they worked exclusively for Defendants, and virtually every aspect of their jobs were controlled by Defendants. Defendants misclassified Plaintiffs and other welders as independent contractors to avoid paying employment taxes, workers' compensation insurance, benefits and overtime. During their time with Defendants, Plaintiffs typically worked at least 10-12 hours per day, often seven days per week. Plaintiffs and other workers for Defendants were paid on an hourly basis, and were paid the same hourly rate for each hour worked, and thus never received overtime pay.

2. Plaintiffs, on behalf of themselves and all others similarly situated, bring this collective action to recover overtime compensation and all other available remedies under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 *et. seq.* (the "FLSA").

3. This collective action consists of:

> **ALL INDIVIDUALS WHO WORKED FOR DEFENDANTS AS WELDERS WHO WERE CLASSIFIED AS INDEPENDENT CONTRACTORS AND PAID STRAIGHT TIME AT ANY TIME IN THE PAST THREE YEARS.[1]**

4. For at least three years prior to the filing of this Complaint, Defendants willfully committed widespread violations of the FLSA by failing to pay these employees for overtime hours worked in excess of forty hours per week.

## II. PARTIES

5. Plaintiffs are individuals who were formerly employed by Defendants. Plaintiffs' Notices of Consent are attached hereto as Exhibit 1.

6. Defendant Clay & Domingue is a Louisiana limited liability company with its principal place of business Jennings, Louisiana. C&D does substantial business in Texas, but it has not designated an agent for service of process in Texas. C&D may be served with process through its registered agent for service of process in Texas, Thomas P. Leblanc, at 113 Dr. Michael Debakey Drive, Lake Charles, LA 70601.

7. Darrin Clay is an individual residing in Louisiana. Mr. Clay may be served with process at 443 Jules Clement Rd., Jennings, LA 70546, or where found.

---

[1] Members of this proposed class with be referred to herein as "the Class Members."

## III. JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et. seq. Jurisdiction is further conferred on this Court by the provisions of 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce..."

9.     This Court has personal jurisdiction over Defendants because they do substantial business in Texas. C&D has two yards in Texas, employs dozens of people in Texas and collects hundreds of thousands of dollars in revenue each year from its operations in Texas. Likewise, Darrin Clay, as the owner of C&D, has substantial contacts with Texas. Mr. Clay, as alleged herein, is a "joint employer" of dozens of welders who perform substantial work in Texas, and on information and belief he regularly interacts with C&D employees based in Texas, including the welders, via e-mail, telephone and in person. Mr. Clay personally benefits from the work these welders perform in Texas. Defendants' contacts in Texas directly relate to the claims asserted in this suit. This Court's assertion of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because, as provided below, a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. Specifically, much of the work performed by Plaintiffs and those in the proposed class was performed in the Eagle Ford Shale region. Many members of the proposed class live and continue to work in the Eagle Ford Shale region.

## IV. COVERAGE

11. Defendants have acted, directly or indirectly, as an employer or joint employer with respect to Plaintiffs and others similarly situated. Defendants are or were jointly responsible for all decisions related to the wages to be paid to the Class Members, the work to be performed by the Class Members, the locations of work performed by the Class Members, the hours to be worked by the Class Members, and the compensation paid to the Class Members.

12. Defendants have each operated an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. Defendants each operated an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had an annual gross sales volume of sales made or business done of not less than $500,000.

14. Plaintiffs, and others similarly situated, were or are employees for Defendants who were engaged in commerce or in the production of goods for commerce.

## V. FACTUAL BACKGROUND

15. C&D is an oilfield and pipeline contractor that specializes in construction, well hook-ups, location site-prep and other oilfield services. C&D has field offices in Texas and Louisiana. C&D typically has 5-10 crews working at any given time, with each crew employing a welder. On information and belief, over the past three years, C&D has employed dozens of welders. Yet, C&D classifies all of its welders as independent contractors.

16. Plaintiffs worked as welders and performed work in the field. Because Plaintiffs and the other Class Members are or were paid a set, flat hourly rate, and because their schedules are or were set by Defendants, they are not given any opportunity to share in the profit and/or loss of their services. They are or were not allowed the freedom to take or reject assignments - instead they must perform work as ordered to do by Defendants. They were assigned a foreman, who acted as their supervisor, were given work assignments by C&D personnel, and were told what to work on, where, and how long an assignment should take. The Class Members were required by C&D to arrive at work each morning at 7:00 a.m. and work at least until 6:00 p.m., or later, depending on when they were released by the foreman - if welders showed up to work late or refused an assignment, they were disciplined by C&D, up to and including termination. Because they work full time or virtually full time for Defendants (often working 70-80 hours per week), they are not allowed an opportunity to expand their business or to take on other jobs for other oilfield service companies. Plaintiffs did not market their services while employed by Defendants. Plaintiffs did not incur operating expenses like rent, payroll, marketing and/or insurance - in fact, they worked under C&D's insurance while employed by Defendants. Welders are not allowed to negotiate their own pay. Likewise, welders are not permitted to hire welders' helpers - all such personnel are hired by C&D as employees, despite the fact that they worked the same schedules as the welders, and were subject to the same control as the welders, working under the same policies and supervision as the welders.[2]

---

[2] Under virtually identical circumstances, a Western District of Texas court found - and the 5th Circuit affirmed - two welders to be employees who were entitled to overtime under the FLSA. *Hobbs v. Petroplex*, 946 F.3d 824, 836 (5th Cir. 2020). In *Hobbs*, the two welders were awarded $101,600 in unpaid wages and liquidated damages, and an additional $120,061.00 in attorney fees, $3,993.04 in costs, and $2,974.19 in expenses.

17.     Darrin Clay was also an "employer" or "joint employer" of Plaintiffs and the Class Members. Mr. Clay is the founder, majority owner and the primary decision-maker of C&D. According to documents on file with the Louisiana Secretary of State, Mr. Clay is an Officer of the company. C&D's website provides that Mr. Clay founded the company with Todd Domingue in 2001 and three years later bought bought out Mr. Domingue's interest "and began the long journey to becoming successful in building a large and profitable company."[3] Mr. Clay is responsible for making employment decisions at C&D (he has the power to hire and fire C&D employees and he directly oversees supervisors who likewise have such power). Mr. Clay also controls employee work schedules and conditions of employment by creating, reviewing and/or approving policies applicable to C&D employees (including but not limited to Plaintiffs), such as the employee handbook and other written and/or unwritten employee policies. Mr. Clay also made or approved the decision to characterize Plaintiffs as independent contractors and to pay them straight time, with no additional compensation for hours worked above forty in a week. Finally, Mr. Clay is a custodian of C&D's payroll and other HR records, as they are maintained by those working under his supervision. As such, Mr. Clay is an employer or a joint employer of Plaintiffs and the Class Members.

18.     No exemption excuses Defendants from paying Plaintiffs and the other Class Members overtime rates under the FLSA. The members of the proposed class were all paid on an *hourly* basis, and thus none of them could fall within any of the white collar exemptions, as the *salary* basis is an essential element of all of the white collar exemptions.

---

[3] https://clayanddomingue.com/about/.

19. Defendants have failed to make a good faith effort to comply with the FLSA. Instead, Defendants knowingly, willfully or with reckless disregard carried out its illegal pattern or practice regarding overtime compensation. Plaintiffs and those similarly situated are entitled to liquidated damages for such conduct.

20. For purposes of this action, the "relevant period" is defined as such period commencing on the date that is three years prior to the filing of this action, and continuing thereafter.

21. Plaintiffs have retained the undersigned counsel to represent them and those similarly situated in this action. Pursuant to the FLSA, Plaintiffs and those similarly situated are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## VI. COLLECTIVE ACTION ALLEGATIONS

22. Other employees have been victimized by the pattern, practice and policy of Defendants. Plaintiffs are aware that the illegal practices and policies of Defendants have been imposed on other, similarly situated workers.

23. Plaintiffs bring their claim on behalf of all current and former Class Members.

24. Defendants' compensation policies and procedures with respect to Plaintiffs and the Class Members and wages paid to Plaintiffs and the Class Members are virtually identical.

25. Defendants' pattern of failing to pay overtime compensation as required by the FLSA results from Defendant's general application of compensation policies and procedures, and does not depend on individualized circumstances of Plaintiffs or the Class Members.

26. Although the issue of damages may be individual in character, this does not detract from the common nucleus of facts with respect to Defendants' liability under the FLSA.

27. Plaintiffs file this case as an "opt-in" collective action as specifically allowed by 29 U.S.C. § 216(b). Plaintiffs bring these claims on their own behalf and on behalf of those similarly situated who have not been fully compensated for all work performed, time spent, and activities conducted for the benefit of Defendants.

28. Plaintiffs request that Defendants identify all prospective Class Members so that proper notice of their right to consent to participation in this collective action may be distributed, including their names, dates of employment, last know addresses, and telephone numbers.

29. Plaintiffs seek to represent those members of the above-described group who, after appropriate notice of their ability to opt into this action, have provided consent in writing to be represented by Plaintiffs' counsel as required by 29 U.S.C. § 216(b).

30. Those individuals who choose to opt in will be listed on subsequent pleadings and copies of the written consents will be incorporated by reference.

31. Plaintiffs will fairly and adequately represent and protect the interests of those similarly situated who opt into this action.

## VII. CAUSE OF ACTION - VIOLATIONS OF THE FLSA

32. The foregoing allegations are incorporated herein by reference.

33. Plaintiffs and others similarly situated were or are non-exempt employees of Defendants.

34. Plaintiffs and others similarly situated are entitled to overtime pay for all hours in excess of forty worked during each seven-day workweek.

35. Defendants violated the FLSA by failing to pay Plaintiffs or others similarly situated overtime compensation at a rate of one-and-a-half times the appropriate regular rate.

36. Plaintiffs, individually and on behalf of others similarly situated, seek all unpaid overtime compensation and an additional equal amount as liquidated damages for a period of three years from the date of the filing of this complaint, as well as reasonable attorney's fees, costs and litigation expenses, including expert witness fees, as provided by 29 U.S.C. § 216(b), along with pre- and post-judgment interest at the highest rate allowed by law.

## VIII. DESIGNATION OF EXPERT WITNESS

37. The foregoing allegations are incorporated herein by reference.

38. Plaintiffs designate the following individual as an expert witness in this case:

> Josh Borsellino, Borsellino, P.C.
> Mailing Address:
> 3267 Bee Cave Rd., Ste. 107, Box # 201
> Austin, TX 78746
> Telephone: (817) 908-9861
> Facsimile: (817) 394-2412
> Email: josh@dfwcounsel.com

39. As permitted under the FLSA, Plaintiffs seek attorney's fees and case expenses incurred in the prosecution of this matter. Mr. Borsellino may provide expert opinion testimony regarding the reasonableness and necessity of the attorney's fees and expenses incurred by Plaintiffs in connection with this action. Mr. Borsellino's biography is publicly available at https://dfwcounsel.com/biography/.

## IX. RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, respectfully request that Defendants be required to answer and appear, and that on final hearing, Plaintiffs and other members of the collective action be awarded:

a. Unpaid overtime wages for all hours worked in excess of forty hours in a workweek at the rate of one and one-half times the employee's regular rate of pay;

b. Liquidated damages in an amount equal to the unpaid overtime compensation;

c. Attorney's fees, costs and expenses;

d. Pre- and post-judgment interest at the highest rates allowed by law; and

e. All other relief, at law or in equity, to which they, and others similarly situated, may be justly entitled.

Respectfully submitted,

By: /s/ Josh Borsellino
Josh Borsellino
Texas Bar No. 24045532
Borsellino, P.C.
Office Address:
1020 Macon St., Suite 15
Fort Worth, Texas 76102
Mailing Address:
3267 Bee Cave Rd., Ste. 107, Box # 201
Austin, TX 78746
Telephone: (817) 908-9861
Facsimile: (817) 394-2412
Email: josh@dfwcounsel.com

**ATTORNEY FOR PLAINTIFFS**